JUDGE DUVALL
delivered the opinion op the court:
It is not pretended that the wards of McDonald were not justly entitled to so much of their interest in the estate of their grandfather, Jonas Meadows, who lived and died in Tennessee, as came to the hands of their guardian. This interest, at the time of the execution of the guardian’s bond, constituted all the estate to which the wards were entitled, and the guardian was doubtless appointed for the sole purpose of enabling him to receive and take care of it — all of which must be presumed to have been well known to the sureties when they executed the bond. With what propriety can they complain that the property situated in Tennessee was not embraced by the stipulations of the bond, or that the receipt of this property by the guardian was not contemplated by them when they became bound for him? Besides, the presumption is that the estate in question was lawfully and rightfully received by *509 tbe Kentucky guardian, and there is nothing in the record to repel this presumption. The statutes of Tennessee upon this subject were not made part of the evidence, and the presumption is that they authorized the representatives of Jonas Meadows to pay over to the Kentucky guardian the estate to which his wards were entitled. The principle stated in the quotation from Story is undoubtedly correct. According to that principle, a guardian appointed in Tennessee would have no right, by virtue of his office,, or by virtue of any authority which the laws of Tennessee could confer upon him, to take possession of, or to exercise any powers or functions over, the property of his ward, whether real or personal, situated in Kentucky. But certainly the law-making power of Kentucky may confer such right upon the foreign guardian, as it has in fact done by the 16th section of the Revised Statutes, (p. 376,) which provides that where there is no guardian in this state of a non-resident minor, his guardian, appointed and qualified according to the law of the place where the minor resides, may collect, receive, and remove to such place of residence, any personal estate of the minor, being in this state. And even the guardian appointed and residing here may, by proper proceedings, be compelled to pay over to a foreign guardian the estate belonging to the non-resident minor. Similar statutory provisions exist in most of the states of the Union.
From what has been said, it results that the estate and property received by the guardian in Tennessee was, so far as this record shows, legally and rightfully the property of his wards; that it came legally and rightfully into the hands of the guardian, and that, consequently, the sureties in the guardian’s bond are liable for any misapplication of it, or failure by the guardian to account for and pay the same over to the persons enti-tiled to it, according to the conditions of the bond.
It would be a waste of time to review the evidence relating to the various matters of account involved in this controversy. The transactions are of long standing, and the proof in regard to them contradictory and uncertain. An attentive examination of the record has satisfied us that no substantial injustice has been done the appellants by the decree complained of, and *510 that it embodies a fair and equitable adjustment of the accounts between the parties.
■ The decree is affirmed.