*W. B. Harrison, for appellant. J. R. Thomas, for appellee.*

---

EMMA B. COLLINS *v.* WILLIAM H. SLAUGHTER.

[Abstract Kentucky Law Reporter, Vol. 1—261.]

**Guardian and Ward.**

> All moneys or property coming to the hands of a guardian and belonging to his ward must be accounted for by the guardian, and his sureties are liable in the event he makes default.

### Appointment of Guardians.

The county court has exclusive jurisdiction in the matter of appointing guardians, and a record showing that the court was in session and a guardian appointed and qualified as such is sufficient even though there may have been no previous order directing or calling the special term at which such appointment is made.

### Approval of Guardian's Bond.

Where a guardian's bond is taken and acknowledged in open court, it amounts to such an approval as the law requires; and the fact that the order shows an appointment of and qualification by the guardian as guardian for three infants will not effect his obligation to each of said wards.

### Limits of Guardian's Expenditures.

A guardian has no right to maintain and educate his ward at an expense beyond the income of his estate, unless in case of the ward's sickness or extreme infancy so that it cannot be bound out as an apprentice, or no suitable person will take it, or in case it is best for the ward that the principal of his personal estate shall be applied for his board and tuition, and the court, upon settlement, shall deem such application to have been judicious; but neither the ward nor his real estate is liable for such expenditures.

### Investment of Ward's Money.

The investment of a ward's money in a foreign corporation, if made, is at the peril of the guardian, and he is properly chargeable with the amount.

APPEAL FROM NELSON CIRCUIT COURT.

September 15, 1880.

OPINION BY JUDGE PRYOR:

The two brothers of the appellant, Mrs. Collins, hold policies of insurance on their lives for $5,000 each, payable to and for the benefit of their two sisters, the appellant and Louisa. At their death their sisters became entitled to the insurance less the expenses incurred in collecting the money. The appellee, W. H. Slaughter, who was also a brother, seems to have had these policies issued for the benefit of his sisters, who had been left without any estate for their support and education. He was also the statutory guardian of the appellant, Emma, and as such received the money on the policies shortly after the death of his brothers. There is no doubt but that he effected the insurance and paid all the premiums, and we think it equally clear that the purpose in view was to make pro-

vision for the two sisters in the event the brothers, or either of them, should die leaving their sisters surviving.

An inquiry as to the motives prompting the appellee to make this provision for his sisters is immaterial in the present case, as upon the death of the two brothers they became entitled to the money, and that portion of it going to the appellant passed into the hands of the appellee as her statutory guardian. When the appellee was appointed guardian the appellant was about ten years of age, and from this record, it seems, owned no estate, real or personal. It is therefore maintained that the sureties in the guardian's bond are not responsible for the moneys or property subsequently acquired by reason of the gratuitous and benevolent action on the part of her brother. It is hardly necessary to respond to this position further than to say that all moneys or property coming to the hands of the guardian, and belonging to the infant, the guardian must account for, and his sureties are responsible in the event he makes default.

It is also argued that this insurance was effected in the American Life Ins. Co., of Philadelphia, and the money collected by the guardian beyond the limits of this state, and therefore the sureties are not liable. This court, in the case of *McDonald v. Meadows*, 1 Met. 507, where the guardian had received the ward's money inherited from a relation in Tennessee, held that the sureties on the guardian's bond were responsible, and in the case of *Duncan v. Petty*, 3 Dana 223, adjudged the sureties liable where the land had been legally sold in another state and the proceeds paid over to the guardian in this state. There is nothing in the record showing that the guardian had received this money wrongfully, but on the contrary the appellee was in business at the time in the city of Louisville as the agent of this insurance company. The presumption is that the money was paid him in the office of the company in that city, but whether paid in the one place or the other the sureties are liable.

An objection is also urged to the manner in which the appellee was appointed guardian. The appellee qualified at a special term of the Nelson County Court. The authority to hold the special term is not questioned, but it is maintained that it must appear from the record that a special term was called, and that the court in pursuance of that order held the court on the day designated. The record shows that at a call term of the Nelson County Court held,

etc., on Monday, the 1st of October, 1866, the following order was made, viz.: "On motion of Wm. H. Slaughter, it is ordered that he be and is hereby appointed guardian of Andrew, Thomas and Emma Slaughter, whereupon he came into court and took the oath required by law, and together with A. C. Nall and M. Donolo, his sureties, entered into and acknowledged bond," etc.

The county courts of the state have general and exclusive jurisdiction in the matter of appointing guardians, and the record showing that the court was held and the guardian appointed and qualified as such is sufficient, although there may have been no previous order directing or calling the special term. That the necessity existed for holding the term will be presumed, and the transaction not only of business pertaining to the action of such a court, but over which it had general and exclusive jurisdiction, will render such acts as valid as if the orders had been made at a regular term. "Where the jurisdiction is complete and unlimited the action of the court will always be within its authority unless the contrary appears." *Jacob's Adm'r v. Louisville &c. R. Co.,* 10 Bush 263.

The bond was taken and acknowledged in open court, and this was such an approval as the law requires, and the fact that the order shows an appointment of and qualification by the appellee as guardian for all three of the infants does not affect or destroy the obligation.

This being an action for the settlement of the guardian's accounts with his ward, it is complained by the appellant that the chancellor erred in sustaining the commissioner's report, by which the whole of her estate is consumed in the expenditures made during her minority.

It is difficult from the exhibits and vouchers filed to determine the character of the accounts against the ward, or the necessity for such an expenditure of money. While it was better for the ward that she should be educated, even by encroaching on the principal of her estate for that purpose, still, the chancellor cannot sanction such extravagance as resulted in the loss of all she owned. The family had been raised in the county of Nelson upon a farm that was not worth exceeding ten or fifteen thousand dollars, and by economy and industry were able to support the entire family, and their position in society maintained. The removal by the appellee to Louisville affords no reason for such an expenditure of means as to enable his ward to move in the most fashionable circles of that city.

It is argued by counsel that she was permitted to visit the most fashionable, having her necessary apparel made by the most fashionable dressmakers and of the most expensive fabrics, and for that reason the accounts should be allowed.

Her brother, the guardian, was then in a prosperous condition, and from the record in this case had determined to share with his sister a part of his own estate to enable her to move in the most fashionable circles, to gratify his own pride, as well as the desires of his sister. His effort seems to have been to provide her with every comfort and luxury within his power, and while his care and affection for his sister is commendable, no chancellor would have authorized an expenditure that would necessarily swallow up the ward's entire estate, that she might indulge in the pleasures and luxuries of life.

A guardian has no right to maintain and educate his ward at an expense beyond the income of his estate unless, first,—the ward is of such tender years or infirm health that he cannot be bound out as an apprentice or no suitable person will take him; secondly,— when it is best for the ward that the principal of his personal estate shall be applied for his board and tuition, and the court upon a settlement of his accounts shall deem such application to have been judicious and properly made. But neither the ward nor his real estate shall be liable for such disbursement. General Statutes, page 506: The estate belonging to the ward after deducting the premiums paid by the appellant amounted, both sums, to near $4,759. The interest on this amount at 6 per cent. would be $285 per annum, and, by adding to this an additional sum so as to increase it to $400, would constitute a liberal allowance for the maintenance and education of a ward possessed of such a small estate.

The mother died in the year 1867, and up to this time the family lived together and were supported from the same farm, and although the brothers contributed to their support no charge should be made or credit given. From the year 1867 to the year 1873, the time at which the first insurance was paid, the appellee should be credited by $100 per year, without interest, and from that date until the guardianship ceased, or until the brother ceased to board and educate his ward, he should be allowed a credit of $400 per annum, and $50 per annum commission. This is a liberal allowance to the guardian, and but for the peculiar circumstances of the case would not be made. Where such heavy expenditures are contemplated by

a guardian as has been made in this case the chancellor should be first consulted, as cases seldom arise where a court of equity will or ought to sanction the expenditure of the whole estate of the ward.

The investment of the ward's money in the Andes Iron Co., a foreign corporation, was made at the peril of the guardian, and he was properly chargeable with the amount. The object of the insurance would be easily frustrated by an affirmance of the judgment below, and the wards left penniless by reason of the expenditures made by an indulgent brother. Neither the pecuniary misfortunes of the guardian nor the prosperous condition of his ward can be looked to as presenting an equitable defense in the consideration of this case.

Judgment *reversed* and cause remanded for further proceedings consistent with this opinion.

A. B. Montgomery, William Johnson, for appellant.

T. T. Forman, Muir & Wickliffe, for appellee.